**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No.  12-cv-02413-REB-MJW

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,

     Plaintiff,

v.

JACQUELINE D. RUYBAL,
ELISE S. RUYBAL,
BRIANNA ELENA RUYBAL and
ELISE S. RUYBAL as personal representative of Estate of Rudolpho Ruybal,

     Defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS

**Blackburn, J.**

     Plaintiff, The Lincoln National Life Insurance Company, filed this action in interpleader to resolve competing claims to the proceeds of a life insurance policy issued by Lincoln National and insuring the life of Rudolpho Ruybal.  Jacqueline Ruybal, the sister of Rudolpho Ruybal,  claims she is entitled to the proceeds of the policy. Elise Ruybal and Brianna Ruybal, the daughters of Mr. Ruybal, claim they are entitled to the proceeds of the policy.  Elise S. Ruybal, as Personal Representative for the Estate of Rudolpho Ruybal, also claims to be entitled to the proceeds of the policy.  On November 18, 2013, this matter came before me for trial to the court on the conflicting claims.

     Having judicially noticed all relevant adjudicative facts in the file and record of this action; having considered the stipulations of the parties, the evidence educed at

trial, and the arguments advanced and the authorities cited by the parties during pretrial proceedings and at trial, I enter the following statement of jurisdiction, findings of fact – which are supported by a preponderance of the evidence – conclusions of law, and orders.

## I. JURISDICTION & CONTROLLING LAW

In the complaint [#1][1], filed September 11, 2013, Lincoln National alleged that Rudolpho Ruybal was insured under a life insurance policy issued by Lincoln National. Mr. Ruybal died on March 28, 2012, and Lincoln National received competing claims to the proceeds of the policy. Lincoln National named as defendants each of the competing claimants to the proceeds of the policy. Under FED. R. CIV. P. 22, Lincoln National sought to deposit the policy proceeds with the court and to resolve the competing claims in interpleader. Five months after filing the complaint, Lincoln National obtained permission from the court to deposit the policy proceeds in the registry of the court, and on February 28, 2013, Lincoln National deposited [#27] the policy proceeds in the court registry. On May 13, 2013, the court entered an order [#31] relieving Lincoln National of all further liability in this matter, including all obligations to any defendant under the life insurance policy. In addition, Lincoln National was relieved from further participation in this lawsuit.

On November 19, 2013, I issued an order [#53] directing the parties to brief the issue of the jurisdiction of the court over this case. In that order, I noted that 28 U.S.C. § 1335 addresses jurisdiction over a civil action in interpleader. In relevant part, § 1335(a) provides:

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

> The district courts shall have original jurisdiction of any civil action of interpleader . . . filed by any person, firm, or corporation . . . having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more . . .if
>
> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to . . . one or more of the benefits arising by virtue of any . . . policy or other instrument, or arising by virtue of any such obligation; and if
>
> (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court . . . .

This statute grants jurisdiction only when two or more adverse claimants are of diverse citizenship. In the present case, there is no diversity of citizenship among the adverse claimants. Rather, they all are residents and citizens of Colorado. Further, as noted by some of the claimants, § 1335(a) grants jurisdiction only when the plaintiff "has deposited" the money or property in dispute with the court. In the present case, such a deposit was not made by the plaintiff when the complaint was filed. Because there is no diversity of citizenship among the claimants and because the policy proceeds were not deposited with the court when this case was filed, the court did not have jurisdiction under § 1335(a) when this case was filed.

In the original complaint [#1], Lincoln National asserted jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship between the plaintiff and the defendants. Each of the defendants – the competing claimants – are residents of Colorado. Lincoln National is incorporated and has its principal place of business in Indiana. The proceeds of the policy total 100,000 dollars. When this case was filed, there was complete diversity of citizenship between the plaintiff and the defendants and the amount in controversy was greater than 75,000 dollars. Thus, the court has jurisdiction under § 1332. Section 1335(a) provides an alternative, but not exclusive, basis for

3

jurisdiction over actions in interpleader.

Colorado law controls the resolution of the substantive issues in this diversity case. ***Erie Railroad Co. v. Tompkins***, 304 U.S. 64, 78 (1938); ***Royal Maccabees Life Insurance Co. v. Choren***, 393 F.3d 1175, 1180 (10th Cir. 2005).

## II. FINDINGS OF FACT

The defendants stipulated to essentially all of the facts relevant to this case. These findings of fact are based on the stipulated facts stated by the defendants in the **Final Pretrial Order** [#50] filed November 15, 2013, and the exhibits and testimony received at trial.

### A. Rudolpho Ruybal, Family, & Separation Agreement

1. Rudolpho Ruybal was a full time employee of the City of Brighton, Colorado, from some time prior to 2001 until his death on March 28, 2012.

2. Defendants, Elise S. Ruybal and Brianna Elena Ruybal, are the daughters of Rudolpho Ruybal.

3. Defendant, Jacqueline D. Ruybal, is the sister of Rudolpho Ruybal.

4. Elise S. Ruybal is the Personal Representative for the Estate of Rudolpho Ruybal.

5. In 2001, Rudolpho Ruybal filed an action for dissolution of marriage in the District Court, Adams County, Colorado. On September 5, 2002, Rudolpho Ruybal and his then wife, Valerie Gomez, signed a Separation Agreement. Exhibit 12. The Separation Agreement was approved by the court on September 6, 2002, *nunc pro tunc* to September 5, 2002, in a Decree of Legal Separation. Exhibit 13.

6. On November 21, 2004, the District Court, Adams County, Colorado entered a Decree of Dissolution of Marriage that approved and incorporated the Separation

Agreement.

7. Paragraph 12.3 of the Separation Agreement reads:

**Life Insurance**: Each of the parties hereby releases and waived any interest, beneficial or otherwise, that he or she may have acquired in or to life insurance policy or policies owned by the other. There is no (cash) value on any life insurance policies. The parties agree they shall both keep their current policies in effect and naming the children as beneficiaries.

8. Rudolpho Ruybal died on March 28, 2012.

### B. City of Brighton Group Life Insurance Coverage

9. At all relevant times, the City of Brighton maintained a master group life insurance policy which covered all city employees who worked 20 or more hours per week (the Employee Group Life Insurance Coverage). The death benefit of the Employee Group Life Insurance Coverage was 100,000 dollars.

10. From some time before September 5, 2002, through the date of his death, March 28, 2012, Rudolpho Ruybal was covered continuously by the City of Brighton's Employee Group Life Insurance Coverage.

11. The policy under which Mr. Ruybal was covered at the time of his death was written by and administered by Lincoln National Life Insurance Company. The death benefit on the policy is 100,000 dollars.

12. At all relevant times, from 2002 through 2012, the Employee Group Life Insurance Coverage was provided automatically to all qualifying employees of the City of Brighton. The coverage was mandatory and automatic for all qualifying employees. Qualifying employees had no control over acceptance or rejection of the coverage, cancellation or replacement of the coverage, or selection of an insurance company to provide coverage for any particular period.

13. At all relevant times, the City of Brighton paid 100 percent of the premiums for the Employee Group Life Insurance Coverage.

14. Between 2001 and 2012, the City of Brighton purchased Employee Group Life Insurance Coverage for its qualifying employees from four different insurance companies. Policies written by each of these companies covered discrete periods of time as follows:

    a. From 2001 to 2003, the City of Brighton purchased Employee Group Life Insurance Coverage from Jefferson Pilot Life Insurance Company;

    b. From 2004 to 2006, the City of Brighton purchased Employee Group Life Insurance Coverage from Aetna Life Insurance Company;

    c. From 2007 to 2008, the City of Brighton purchased Employee Group Life Insurance Coverage from Standard Life Insurance Company; and

    d. From 2009 to 2012, the City of Brighton purchased Employee Group Life Insurance Coverage from Lincoln National Life Insurance Company.

15. Each time the City of Brighton changed the company from which it purchased Employee Group Life Insurance Coverage, the new insurance company issued a new written policy to the City of Brighton reflecting the terms of the Employee Group Life Insurance Coverage. Exhibit 1 (Aetna policy); Exhibit 3 (Standard policy); Exhibit 5 (Lincoln policy); Exhibit 9 (Deposition of Karen Borkowski), 4:7 - 22:24.

16. During the time in which the City of Brighton maintained its Employee Group Life Insurance Coverage with the Standard Life Insurance Company, Mr. Ruybal completed an Enrollment and Change Form. Exhibit 4. On that form, Mr. Ruybal designated his sister, Jacqueline Ruybal, as the primary beneficiary to receive 100 percent of the benefits provided by the policy. Mr. Ruybal signed the Enrollment and Change Form and dated the form, apparently in error, with the date of his birth, "7/13/66."

17. The Enrollment and Change Form states that "(d)esignations are not valid unless signed, dated, and delivered to the Employer during your lifetime." Exhibit 4.

18. Lincoln National Life Insurance Company considers the Enrollment and Change Form, Exhibit 4, to be a valid designation of beneficiary with regard to the death benefit due as a result of Mr. Ruybal's death.

19. On September 5, 2002, the date of the Separation Agreement, Mr. Ruybal was covered by a group life insurance policy written and administered by Jefferson Pilot Life Insurance Company.

20. On March 28, 2012, the date of Mr. Ruybal's death, Mr. Ruybal was covered by a group life insurance policy written and administered by the Lincoln National Life Insurance Company.

### III. CONCLUSIONS OF LAW

1. "Anyone attacking the right of a named beneficiary to receive the proceeds of an insurance policy has the burden of proving that the beneficiary is not entitled thereto." ***Am. Cas. Co. v. Rose***, 340 F.2d 469, 471 (10th Cir. 1964). ***See also Zolintakis v. Orfanos***, 119 F.2d 571, 575 (10th Cir. 1941).

2. Defendant, Jacqueline D. Ruybal, is the named primary beneficiary of the policy of the Lincoln National Life Insurance Company which provides a death benefit on the death of Rudolpho Ruybal.

3. Defendants, Elise S. Ruybal, Brianna Elena Ruybal, and Elise S. Ruybal as Personal Representative for the Estate of Rudolpho Ruybal, are challenging the right of Jacqueline Ruybal to receive the death benefit under the Lincoln National Life Insurance Company policy. Thus, Elise S. Ruybal, Brianna Elena Ruybal, and Elise S. Ruybal as Personal Representative for the Estate of Rudolpho Ruybal have the burden to prove by

a preponderance of the evidence that Jacqueline D., Ruybal is not entitled to the death benefit under the Lincoln National Life Insurance Company policy.[2]

4. The September 5, 2002, Separation Agreement between Rudolpho Ruybal and Valerie Gomez is a contract. Exhibit 12.

5. The primary goal in interpreting a contract is to effectuate the intent of the parties. ***Union Insurance Co. v. Houtz***, 883 P.2d 1057, 1061 (Colo. 1994); ***Simon v. Shelter General Insurance Co.***, 842 P.2d 236, 239 (Colo. 1992). To accomplish this objective, the terms of the contract are given their plain and ordinary meanings, unless the contract itself indicates that the parties intended otherwise. ***Bohrer v. Church Mutual Insurance Co.***, 965 P.2d 1258, 1261-62 (Colo. 1998); ***Chacon v. American Family Mutual Insurance Co.***, 788 P.2d 748, 750 (Colo. 1990). Contract provisions that are clear and unambiguous should be enforced as written. ***Chacon***, 788 P.2d at 750; ***Kane v. Royal Insurance Co. of America***, 768 P.2d 678, 680 (Colo. 1989).

6. "A court should only admit parol evidence when the contract between the parties is so ambiguous that their intent is unclear. In the absence of allegations of fraud, accident, or mistake in the formation of the contract, parol evidence may not be admitted to add to, subtract from, vary, contradict, change, or modify an unambiguous integrated contract." ***Boyer v. Karakehian***, 915 P.2d 1295, 1299 (Colo. 1996) (citations omitted). There are no allegations of fraud, accident, or mistake in this case.

7. The final sentence of paragraph 12.3 of the Separation Agreement reads: "The parties agree they shall both keep their current policies in effect and naming the children as beneficiaries." This provision of the Separation Agreement is not ambiguous

---

[2] The results would be the same even if Jacqueline Ruybal had the burden of persuasion.

8

and the plain and ordinary meaning of the terms used in this provision readily can be determined.

8.  Parol evidence may not be admitted to add to, subtract from, vary, contradict, change, or modify the unambiguous provisions of the final sentence of paragraph 12.3 of the Separation Agreement.  No other provisions of the Separation Agreement arguably are controlling with regard to the life insurance policy at issue here.

9.  The plain and ordinary meaning of the term "current policies in effect," as used in paragraph 12.3 of the Separation Agreement, includes only life insurance policies which were in effect and which covered either Rudolpho Ruybal or Valerie Gomez on September 5, 2002.

10.  Life insurance policies which became effective after September 5, 2002, and which covered either Rudolpho Ruybal or Valerie Gomez are not subject to the limitations stated in paragraph 12.3, because such policies do not fall within the plain and ordinary meaning of the term "current policies in effect."

11.  The Lincoln National Life Insurance Company policy under which Mr. Ruybal was covered at the time of his death does not fall within the plain and ordinary meaning of the term "current policies in effect," as used in paragraph 12.3 of the Separation Agreement.  This is so because the Lincoln National Life Insurance Company policy was not in effect and did not cover Mr. Ruybal on September 5, 2002.

12.  The Lincoln National Life Insurance Company policy under which Mr. Ruybal was covered at the time of his death is not subject to the limitations stated in paragraph 12.3 of the Separation Agreement.

13.  The benefits provided to employees of the City of Brighton under the succession of life insurance policies purchased by the city from 2001 to 2012, and the

terms of those policies, are essentially identical in their basic features.  However, these similarities do not prove *ipso facto* that the policy in effect on September 5, 2002, the date of the Separation Agreement, is the same policy that was in effect on March 28, 2012, the date of Mr. Ruybal's death.  Rather, the evidence shows that the policy in effect on September 5, 2002, ended on December 31, 2003, and was replaced by a succession of new policies.

14.  The Enrollment and Change Form completed by Mr. Ruybal is valid.  Exhibit 4.  The Enrollment and Change Form is not made invalid because Mr. Ruybal wrote an incorrect date next to his signature on the form.  Language on the form indicates that beneficiary designations are not valid unless dated, but this language does not include a requirement of a correct date.  Such an immutable requirement may not be implied based on the language of the form.

15.  To the extent the requirements of the Standard Insurance Company policy, Exhibit 3, may be relevant to a determination of the validity of the Enrollment and Change Form, the requirements of that policy do not render the Enrollment and Change From invalid.  The policy requires that the form be "dated."  Exhibit 3, policy page no. 18.  This language does not include an immutable requirement of a correct date.  Such a requirement may not be implied based on the language of the policy.

16.  The parties did not present or substantiate any other challenge to the validity of the Enrollment and Change Form and the determination of Lincoln National Life Insurance Company to consider the Enrollment and Change Form to be a valid designation of beneficiary with regard to the death benefit due as a result of the death of Mr. Ruybal.

17.  Defendants, Elise S. Ruybal,  Brianna Elena Ruybal, and Elise S. Ruybal as

Personal Representative for the Estate of Rudolpho Ruybal, have not proven by a preponderance of the evidence that defendant, Jacqueline Ruybal, is not entitled to receive the death benefit under the Lincoln National Life Insurance Company policy covering Rudolpho Ruybal.[3]

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the interpleader claim brought by the plaintiff, The Lincoln National Life Insurance Company, is  **RESOLVED** on the terms stated in this order;

2.  That Jacqueline D. Ruybal, the named primary beneficiary of the life insurance policy of The Lincoln National Life Insurance Company insuring the life of Rudolpho Ruybal, is **ENTITLED TO RECEIVE** the proceeds of that life insurance policy;

3.  That Elise S. Ruybal, Brianna Elena Ruybal, and Elise S. Ruybal as Personal Representative for the Estate of Rudolpho Ruybal are **NOT ENTITLED TO RECEIVE** the proceeds of the life insurance policy of The Lincoln National Life Insurance Company insuring the life of Rudolpho Ruybal, either individually or collectively;

4.  That the clerk of the court is **ORDERED** to pay the proceeds of  the life insurance policy of The Lincoln National Life Insurance Company insuring the life of Rudolpho Ruybal, totaling 100,000 dollars and currently on deposit in the registry of the court, plus accrued interest, if any, to defendant, Jacqueline D. Ruybal;

5.  That the plaintiff, The Lincoln National Life Insurance Company, is **DISCHARGED** from all further liability to Jacqueline D. Ruybal, Elise S. Ruybal, Brianna Elena Ruybal, and Elise S. Ruybal as Personal Representative for the Estate of

---

[3] Conversely, the evidence is preponderant that Jacqueline Ruybal is entitled to the proceeds of the life insurance policy issued by The Lincoln National Insurance Company.

Rudolpho Ruybal for payment of benefits under the life insurance policy of The Lincoln National Life Insurance Company insuring the life of Rudolpho Ruybal;

6. That **JUDGMENT SHALL ENTER** in favor of defendant, Jacqueline D. Ruybal, against defendants, Elise S. Ruybal, Brianna Elena Ruybal, and Elise S. Ruybal as Personal Representative for the Estate of Rudolpho Ruybal, on the terms stated in this order; and

7. That under FED. R. CIV. P. 54(d)(1), defendant, Jacqueline D. Ruybal, is **AWARDED** her costs, to be taxed by the clerk of the court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated July 18, 2014, at Denver, Colorado.

                                      **BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge